UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

YOUNG MEN'S CHRISTIAN
ASSOCIATION OF PLATTSBURGH,

                Plaintiff,

  -against-                                      8:18-CV-0565 (LEK/DJS)

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      This insurance coverage dispute is before the Court following its removal from New York State court on diversity of citizenship pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1331. Dkt. No. 1 ("Notice of Removal"). The former executive director of Plaintiff, the Young Men's Christian Association ("YMCA") of Plattsburgh, failed to properly implement its employee benefits program for approximately fifteen employees, resulting in underpayment to the YMCA Retirement Fund. Dkt. No. 2 ("Complaint") ¶¶ 7, 14. During the relevant period, Plaintiff had an employee benefits insurance policy with defendant Philadelphia Indemnity Insurance Company, which has largely denied coverage for the funds Plaintiff owes to the Retirement Fund. Id. ¶¶ 4–6, 9–16. Seeking declaratory relief and damages, Plaintiff alleges that Defendant has violated its contract as well as certain state statutory duties. Id. ¶¶ 19–35.

      Defendant now moves to dismiss the suit for failure to state a claim. Dkt. Nos. 6 ("Motion to Dismiss"), 6-2 ("Memorandum"), 17 ("Reply"). Plaintiff opposes the motion. Dkt.

No. 14 ("Opposition"). For the following reasons, the Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

The following facts are taken from the allegations in the Complaint, which are assumed to be true when deciding a motion to dismiss. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012).

Plaintiff is a non-profit organization existing under the laws of New York State, with its principal place of business in Plattsburgh, New York. Compl. ¶ 1. Defendant is a corporation incorporated, and with its principal place of business in Pennsylvania. Id. ¶ 2.

In April 2015, Defendant issued to Plaintiff a "comprehensive Commercial Lines (insurance) Policy" ("CL Policy"), with a policy period of May 1, 2016 through May 1, 2017. Compl. ¶ 4. Among the endorsements included in the policy was one providing "Employee Benefits Administration Errors and Omissions Insurance" ("Benefits Insurance Policy"). Id. ¶ 5. Plaintiff paid an additional premium for this coverage. Id.

Among its provisions, the Benefits Insurance Policy provided that Defendant "will pay those sums that you become legally obligated to pay as damages because of a negligent act, error or omissions in the administration of your employee benefits program." Id. ¶ 6. The Benefits Insurance Policy defines "administration" as follows:

> Administration means performance of the ministerial functions of your employee benefits program and could include:
>
> a. applying the program rules to determine who is eligible to participate in benefits;
>
> b. calculating service and compensation credits of employees;

    c. preparing messages to tell employees about their benefits;

    d. maintaining service and employment records of those employees participating in your employee benefits program;

    e. preparing reports required by government agencies;

    f. calculating benefits;

    g. informing new employees about your employee benefits program;

    h. implementing enrollment instructions from your employees in your employee benefits program;

    i. advising, other than legal advice, employees who are participating in your employee benefits program of their rights and options;

    j. collecting contributions and applying them as called for under the rules of your employee benefits program;

    k. preparing benefits reports for your employees participating in your employee benefits program;

    l. processing claims.

Id.

  In "early 2017," Plaintiff "discovered" that its previous executive director had "committed errors and made omissions that caused [Plaintiff] to fail to implement its employee benefits program with the YMCA Retirement Fund" for approximately fifteen employees. Id. ¶ 7. Specifically, the previous executive director had failed to (1) determine who was eligible for benefits; (2) calculate the "service and compensation credits" for those employees; (3) prepare messages to employees about their benefits; (4) calculate the benefits of employees; (5) inform new employees about the benefits program; and (6) collect contributions and apply them as called for under the program rules. Id. ¶¶ 7, 11. Most importantly, the executive director failed to

3

pay the employer portion of pension contributions, and likewise failed to withdraw contributions from employees' paychecks to pay the employee contribution to the pension fund. Id.

Plaintiff "promptly" advised Defendant of these errors, inquiring as to coverage and assistance. Id. ¶ 8. On May 30, 2017, Defendant issued its first partial coverage disclaimer ("First Disclaimer"). Id. ¶ 9. In its First Disclaimer, Defendant explained that "[t]o the degree that there is coverage available for this type of claim, it would be limited to lost profits only." Id. ¶¶ 10–12. In effect, Defendant disclaimed coverage for any principal amounts that Plaintiff may be found liable to pay into its employee benefit program, including contributions that the impacted employees would have made but for the error. Id. The First Disclaimer did not explain whether "lost profits" encompassed interest that the Retirement Fund would have earned on the contributions, had they been properly collected and paid. Id. ¶ 12

In June 2017, Defendant issued a second partial coverage disclaimer ("Second Disclaimer") to Plaintiff. Id. ¶ 13. Defendant advised that it had received a letter from the Retirement Fund demanding full payment of all amounts due from Plaintiff. Id. ¶ 14. Defendant reiterated its position that only "lost profits coverage" would be available for such a claim, but advised Plaintiff that Defendant's counsel would be available to represent Plaintiff in defending against the Retirement Fund's claim. Id.

On June 30, 2017, Plaintiff wrote to Defendant inquiring as to the basis for its position that the Benefits Insurance Policy did not cover the principal amounts due to the Retirement Fund. Id. ¶ 15. Defendant responded that its position was based on Baylor Heating & Air v. Federated Mut., 987 F.2d 415 (7th Cir. 1993). Id. ¶ 16.

As a result of Defendant's denial of coverage, Plaintiff has had to borrow "substantial funds" to pay the employer and employee contributions owed to the Retirement Fund. Id. In addition, Plaintiff is "likely to experience negative publicity that will diminish its ability to raise funds within the community." Id. ¶ 17.

Plaintiff alleges that Defendant's decision to deny coverage was made in "bad faith," and that Defendant was aware of the financial harm that denial would cause Plaintiff. Id. ¶¶ 25–30. Plaintiff further alleges that Defendant has engaged in "Unfair Trade Practices" under General Business Law ("G.B.L.") § 349 and Insurance Law § 2601, by "knowingly misrepresenting" to Plaintiff and other New York insured the provisions relating to the coverage at issue and by "not attempting in good faith to resolve" Plaintiff's claim. Id. ¶¶ 31–35. Plaintiff further alleges that Defendant's "unreasonable and arbitrary interpretation of its policy provisions could result in many small businesses and not-for-profits being held individually liable for amounts that they cannot afford, and that they reasonably believed were covered." Id. ¶ 32.

Plaintiff seeks a declaration that the Benefits Insurance Policy provides coverage for all amounts that Plaintiff owes to the Retirement Fund as a result of the errors, including the "principal amounts owed, employee contributions, and the interest that would have accrued had those payments been made." Id. ¶ 24, and at 10.[1] Plaintiff also seeks an order requiring Defendant to settle the claim made by the Retirement Fund in full. Id. at 10. In addition, Plaintiff seeks reimbursement for expenses and loss of good will, three times actual damages up to $1,000,

---

[1] The cited page numbers for documents refer to those generated by the Court's Electronic Case Filing (ECF) system.

punitive damages against Defendant based on a pattern of tortious conduct aimed at its New York insureds, and attorneys' fees. Id. at 11.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In assessing whether this standard has been met, courts take "all factual allegations contained in the complaint" as true, Twombly, 550 U.S. at 572, and "draw all inferences in the light most favorable to the non-moving party," In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted).

## IV. DISCUSSION

### A. Applicable Law in Diversity

A federal court sitting in diversity jurisdiction, as here, must apply the substantive law of the state in which it is sitting, including the state's choice of law rules. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The dispute here must be resolved under New York Law, as the policy was issued to a New York entity insuring activities and property in New York. See Ethicon, Inc. v. Aetna Cas. & Surety Co., 688 F. Supp. 119, 123 (S.D.N.Y. 1988) ("New York courts have traditionally resolved choice of law issues involving insurance policies by applying the law of the state which the parties understood would be the principal location of the risk and the state most intimately concerned with the outcome of the litigation.").

**B. Employer and Employee Pension Contributions**

The parties dispute whether the Benefits Insurance Policy covers two types of funds Plaintiff now owes the Retirement Fund for the relevant period: (1) the employer portion of the pension contributions, equivalent to 7% of eligible employees' wages (the "Employer Contribution"); and (2) the employee portion of the pension contributions, totaling 5% of eligible employees' wages, which should have been withheld from those employees' paychecks (the "Employee Contribution"). Compl. ¶ 11; Mem. at 12–15; Opp'n at 14–17.

Under New York law, a court must construe an insurance policy, like other contracts, to give effect to the parties' intent as expressed by their words. Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Assoc., 158 F.3d 65, 77 (2d Cir. 1998). If the language of the policy is clear and unambiguous, the court must enforce it as written. Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995). An unambiguous contract provision is one with "a definite and precise meaning, unattended by danger of misconception in the purpose of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Sayers v. Rochester Tel. Corp., 7 F.3d 1091, 1095 (2d Cir. 1993) (citations omitted). Moreover, New York follows the "hornbook rule that policies of insurance . . . are to be liberally construed in favor of the insured." Miller v. Continental Ins. Co., 358 N.E.2d 258, 260 (N.Y. 1976).

*1. Employer Contribution*

As alleged, Plaintiff's obligation to make the Employer Contribution did not arise "because of a negligent act, error or omission in the administration of [Plaintiff's] employee benefits program," as the Benefits Insurance Policy requires. Compl. at 14. Rather, as Plaintiff acknowledges in its Opposition, "[u]nder the terms of the YMCA Retirement Plan" (i.e. a pre-

7

existing contract), Plaintiff itself would pay the Employer Contribution. Opp'n at 7, 12. The negligence of the executive director in administering benefits no doubt delayed the Employer Contribution, but the obligation to make that contribution existed already, because of the terms of the YMCA Retirement Plan, not because of any negligent error in administration. See, e.g., Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 590 (1st Cir. 2004) ("'The refusal to pay an obligation simply is not the cause of the obligation, and the [insured's] wrongful act in this case did not result in their obligation to pay; [its] contract imposed on [it] the obligation to pay.'") (quoting Am. Cas. Co. of Reading, Pa. v. Hotel & Rest. Emps. & Bartenders Int'l Union Welfare Fund, 942 P.2d 172, 176–77 (Nev. 1997)). See also Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 130 n.7 (2d Cir. 2001) (not deciding the "potentially serious question" of whether an insured may ever seek coverage under an insurance policy for amounts it was contractually obligated to pay, but citing Am. Cas. Co.). Accordingly, the Benefits Insurance Policy did not cover the Employer Contribution, and Plaintiff's claims for recovery of that sum from Defendant must be dismissed.

    2. *Employee Contribution*

  With respect to the Employee Contribution, however, Plaintiff's claims survive. As alleged, the Employee Contribution was to come from employee funds, not Plaintiff's funds, though Plaintiff would have facilitated the payments by withdrawing these sums from paychecks. Compl. ¶ 11. The Court lacks documents memorializing the exact obligations Plaintiff owed to the Retirement Fund, but at this stage, the Court must accept the Complaint's factual allegations as true, and draw all inferences in the light most favorable to Plaintiff. In re NYSE Specialists Sec. Litig., 503 F.3d at 95. Plaintiff has plausibly alleged that, in the absence of the executive

director's errors, it would not have "become legally obligated" to pay from its own funds the Employee Contribution. Id. Based on the facts alleged, that legal obligation arose only "because" of the Executive Director's "negligent act, error or omission in the administration of [Plaintiff's] employee benefits program," and not because of a pre-existing contractual obligation.

Defendant counters that Plaintiff is not, in fact, "legally obligated to pay as damages" the Employee Contribution, because Plaintiff is entitled to reimbursement of this amount from the employees themselves in a claim for unjust enrichment. Reply at 5–6. Defendant's theory of unjust enrichment here is that employees received a paycheck without an Employee Contribution withdrawn, but nevertheless get their full pension benefits as if they had made these contributions, since the Employee Contribution has now been paid by Plaintiff directly. Id.

Plaintiff has plausibly pled that the Retirement Fund has sought funds from Plaintiff for the Employee Contribution, which Plaintiff is now legally obligated to pay. Whether Plaintiff has a viable unjust enrichment suit against current and former employees does not change whether or not Plaintiff is "legally obligated" to pay the Employee Contribution to the Retirement Fund. By Defendant's logic, if a party were insured for a tort, and had insurance to cover that tort, the party would not be deemed to have any legal obligation to pay the victim for damages resulting from that tort. Obviously, though, if Plaintiff does recover Employee Contributions from employees, Plaintiff's potential claim against Defendant would decrease correspondingly. Defendant also notes that it may exercise subrogation rights under the policy to recoup the Employee Contribution from the employees. Reply at 17.

Defendant also argues for dismissal of the Employee Contribution claim because the Employee Contribution liability is "contractual in nature," Mem. at 12, and under New York law,

9

"liability policies do not provide coverage where the complaint sounds in contract and not in negligence," Royal Ins. Co. of Am. v. v. Ru-Val Elec. Corp., No. 92-CV-4911, 1996 WL 107512, at *2 (E.D.N.Y. Mar. 8, 1996). Defendant points to a number of cases, though none from the New York Court of Appeals, for the proposition that liability coverage does not cover damages stemming from a breach of contract. Mem. at 13–14. But in those cases, the insured plaintiffs had pre-existing contractual obligations independent of any wrongful act. See, e.g., Health Net, Inc. v. RLI Ins. Co., 141 Cal. Rptr. 3d 649, 665 (Cal. Ct. App. 2012) (finding no liability coverage for unpaid benefits because health insurers were "obligated to pay their insureds by contract, independent of any Wrongful Act"); see also Am. Cas. Co., 942 P.2d at 176–77. With regard to the Employee Contribution, however, Plaintiff seeks coverage not for pre-existing contractual obligations, but for damages that it did not owe until negligent benefits administration caused them.

Defendant also argues for dismissal on public policy grounds, in that an "undeserved gain" would accrue to Plaintiff, and the contract would present a moral hazard if the Employee Benefits Insurance covers the damages at issue here. Mem. at 13. But at least with regard to the Employee Contribution, there is no gain or windfall to Plaintiff directly. The Plaintiff is now obliged to pay the Employee Contribution to the Retirement Fund directly, rather from employees' paychecks; it would not have been required to do so but for the wrongful act. Therefore, insurance coverage will simply make Plaintiff whole. As for moral hazard, the Court is confident that sophisticated insurance companies are capable of drafting contracts and conducting due diligence regarding an insured's pension policies to avoid such pitfalls. "Absent unequal bargaining power or unconscionability . . . a court will not rewrite a contract." Burke v.

10

PriceWaterHouseCoopers LLP Long Term Disability Plan, 537 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), aff'd, 572 F.3d 76 (2d Cir. 2009).

Accepting the alleged facts as true, the Court finds, "liberally constru[ing] the policy in favor of the insured," Miller, 358 N.E.2d at 260, that "those sums that [Plaintiff] [has] become legally obligated to pay as damages because of a negligent act, error or omission in the administration of [Plaintiff's] employee benefits program" include the Employee Contribution. Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for the Employee Contribution is denied.

### C. Bad Faith

#### 1. Claim for Bad Faith Denial of Coverage

Plaintiff brings a claim for bad faith denial of insurance coverage. Compl. ¶¶ 25–30.

To maintain a cause of action for bad faith against an insurer under New York law an insured must allege a violation of a duty independent of the insurance contract. N.Y. Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 767–68 (N.Y. 1995). It is well established that, under New York law, "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002). New York law "does not recognize . . . an independent cause of action for bad faith denial of insurance coverage." Woodhams v. Allstate Fire and Cas. Co., 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), aff'd, 453 F. App'x 108 (2d Cir. 2012).

Plaintiff's independent cause of action for "Bad Faith Coverage Denial" is based entirely on the denial of coverage under the contract, unrelated to any separate duty, Compl. ¶¶ 25–30, and must therefore be dismissed as a separate claim. Harris, 310 F.3d at 80.

*2. Consequential Damages*

Though it is not an independent cause of action, bad faith may justify the recovery of consequential damages in addition to the loss insured by the policy at issue so long as the consequential damages were "'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" Panasia Estates, Inc. v. Hudson Ins. Co., 886 N.E.2d 135, 137 (N.Y. 2008) (quoting Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 886 N.E.2d 127, 130 (N.Y. 2008). In breach of contract actions, consequential damages are those damages that do not directly flow from the contract breach. Bi-Economy, 886 N.E.2d at 130. Defendant moves to dismiss all "extra-contractual damages." Mem. at 15.

In order to determine whether consequential damages were within the contemplation of the parties at the time of contracting, New York courts take into consideration whether there was a specific provision in the policy itself permitting recovery for the loss. Cont'l Info. Sys. Corp. v. Fed. Ins. Co., No. 02-CV-4168, 2003 WL 145561, at *5 (S.D.N.Y. Jan. 17, 2003). Here, the Complaint contains no allegation suggesting that the parties contemplated consequential damages at the time of contracting. Indeed, the Benefits Insurance Policy attached to the Complaint makes clear that, at the time of contracting, the parties contemplated stark limits on the potential recoveries. The agreement states that beyond those sums that Plaintiff "become[s] legally obligated to pay as damages because of a negligent act, error or omission" in employee benefits administration, "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments[2] of this coverage form."

---

[2] The Supplementary Payments section does not suggest any of the sorts of liability in dispute here. Compl. at 15.

Compl. at 14. Further, the Complaint specifies that Defendant "will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limits of insurance." Id.. at 18.

As Plaintiff's pleadings lack plausible allegations that consequential damages were within contemplation of the parties at the time of contracting, consequential damages are unavailable here. Therefore, Plaintiff's bad faith claim cannot survive even in the more limited form of support for consequential damages.

**D. Deceptive Acts under Insurance Law § 2601 and G.B.L. § 349**

Plaintiff alleges that Defendant's deceptive acts violated Insurance Law § 2601 and G.B.L. § 349. Compl. ¶¶ 31–35.

As a preliminary matter, § 2601 affords no private right of action. Rocanova v. Equitable Life Assurance Society, 634 N.E.2d 940, 944 (N.Y. 1994). Therefore, to the extent Plaintiff alleges a claim for deceptive acts under § 2601, that claim is dismissed with prejudice.

As for G.B.L. § 349, it prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." To state a claim under § 349, a plaintiff must allege "(1) acts or practices that are 'consumer-oriented;' (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts." DePasquale v. Allstate Ins. Co., 179 F. Supp. 2d 51, 58 (E.D.N.Y.) (citing Gaidon v. Guardian Life Ins. Co. of America, 725 N.E.2d 598, 603–04 (N.Y. 1999)), aff'd, 50 F. App'x. 475 (2d Cir. 2002). The New York Court of Appeals has clarified that under the "consumer-oriented" prong, a plaintiff must demonstrate harm directed at consumers or the public at large; "[p]rivate contract disputes unique to the parties . . . would not fall within the

13

ambit of the statute." N.Y. Univ., 662 N.E.2d at 770. "The conduct need not be repetitive or recurring, but defendant's acts or practices must have a broad impact on consumers at large." Id. (internal citations omitted).

Section 349 does not require Plaintiff to allege fraud, and therefore the particularity requirements of Rule 9(b) of the Federal Rule of Civil Procedure are not triggered. However, to state a claim under § 349 Plaintiff must still allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim. Thus, conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under § 349 in the absence of supporting factual allegations. See Northwestern Mutual Life Ins. Co. v. Wender, 940 F. Supp. 62, 65 (S.D.N.Y. 1996) (denying § 349 claim where "there [we]re no specific allegations of an impact on consumers at large, or that Plaintiff employed deceptive practices" because "[c]onclusory allegations are insufficient to withstand a motion to dismiss."); MaGee v. Paul Revere Life Ins. Co., 954 F.Supp. 582, 586 (E.D.N.Y. 1997) (allegations that insurer's refusal to pay benefits "is part of a national policy to terminate unprofitable disability insurance policies by denying benefits to insureds," were inadequate to state a claim under § 349, because "any other conclusion would effectively permit a plaintiff to convert almost any garden variety breach of contract cause of action into a violation of section 349").

"Several courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349. Almost uniformly, those courts have held that such disputes are nothing more than private

contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." DePasquale, 179 F. Supp.2d at 61 (collecting cases).

Here, Plaintiff alleges simply that Defendant violated § 349 by "knowingly misrepresenting to [Plaintiff] and, on information and belief, its other New York insured, the provision relating to the coverage at issue," and claims that Defendant's "unreasonable and arbitrary interpretation of its policy provisions could result in many small business and not-for-profits being held individually liable for amounts that they cannot afford, and that they reasonably believed were covered." Compl. ¶¶ 31–35. Such conclusory allegations are insufficient to support the "consumer oriented" prong of § 349. See Ticheli v. Travelers Ins. Co., No. 14-CV-172, 2014 WL 12587066, at *3 (N.D.N.Y. Dec. 23, 2014) (dismissing § 349 claim because of speculative, conclusory allegations that insurance's company's conduct was in keeping with its practices toward "the public at large" and "its policyholders").

Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for deceptive acts under § 349 is granted.

### E. "Extra-Contractual" Damages

In the Complaint, Plaintiff makes claims for what Defendant terms "extra-contractual damages," Mem. at 15. These include punitive damages, triple damages up to $1000, attorneys' fees, and reimbursement for "expenses and loss of good will it has incurred" as a result of Defendant's denial of coverage. Compl. at 10–11. Defendant moves to dismiss these claims. Mem. at 20–24.

*1. Punitive Damages*

To state a claim for punitive damages, a plaintiff must allege conduct actionable as a tort independent of the breach of contract. N.Y. Univ., 662 N.E.2d at 316. As noted above in the Court's discussion of Plaintiff's bad faith claim, no tort independent of the breach of contract has been alleged here, and so the claim for punitive damages must be dismissed.

*2. Triple Damages up to $1,000*

G.B.L. § 349(h) permits a plaintiff to recover three times its actual damages up to $1,000, if a defendant has willfully or knowingly violated § 349. But since Plaintiff's § 349 claim has been dismissed, this particular form of damages is unavailable to Plaintiff.

*3. Attorneys' Fees*

It is true that a Court may award reasonable attorneys' fees to a prevailing plaintiff in a § 349 action. § 349(h). However, Plaintiff's § 349 claim has been dismissed, so attorneys' fees are not available via that route.

Neither the New York Court of Appeals' holdings in Panasia or Bi–Economy suggest that it intended to alter in the insurance context the traditional American rule that each party should bear its own attorneys' fees. Stein LLC v Lawyers Title Ins. Corp., 953 N.Y.S.2d 303, 304 (N.Y. App. Div. 2012); see Mighty Midgets, Inc. v. Centennial Ins. Co., 389 N.E.2d 1080, 1085 (N.Y. 1979) ("It is the rule in New York that [an award of attorneys' fees] may not be had in an affirmative action brought by an insured to settle its rights."); see also Globecon Gr., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 177 (2d Cir. 2006) ("Under New York law, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy."(internal quotation marks omitted)).

The New York Court of Appeals has suggested that an exception to the general rule prohibiting claims for attorneys' fees may exist when the insured can make "a showing of such bad faith [on the part of the insurer] in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." Sukup v. State, 227 N.E.2d 842, 844 (N.Y. 1967). But "[i]t would require more than an arguable difference of opinion between carrier and insured over coverage to impose an extra-contractual liability for legal expenses in a controversy of this kind." Sukup, 227 N.E.2d at 844.

As Plaintiff has alleged no underlying facts to support a finding of bad faith, other than "an arguable difference of opinion between carrier and insured over coverage," Sukup, 19 N.Y.2d at 522, and conclusory allegations that Defendant "knowingly misrepresented" coverage and knew that denial of coverage would hurt Plaintiff's finances and reputation, the Court will not "impose extra-contractual liability" for attorneys' fees. Sukup, 227 N.E.2d at 844. Plaintiff's claim for attorneys' fees is therefore dismissed.

### 4. *Reimbursement for Expenses and Loss of Good Will*

As explained above, consequential damages are unavailable here, as this is an insurance contract dispute in which the governing contract does not suggest that consequential damages were "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." Panasia, 886 N.E.2d at 137. Loss of "good will" is a form of consequential damages. Dupont Flooring Sys., Inc. v. Discovery Zone, Inc., No. 98-CV-5101, 2004 WL 1574629, at *7 (S.D.N.Y. July 14, 2004). Accordingly, Plaintiff's claim for loss of good will is dismissed.

As for Plaintiff's demand for reimbursement of undefined "expenses," "it is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." N.Y. Univ., 662 N.E.2d at 772. Accordingly, Plaintiff's claim for an award for expenses is also dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Motion to Dismiss is **GRANTED** as to Plaintiff's following claims and forms of relief, which are **DISMISSED without prejudice**: (1) declaratory relief claim regarding the Employer Contribution owed by Plaintiff to the YMCA Retirement Fund; (2) bad faith coverage denial claim; (3) unfair trade practices claim under G.B.L. § 349; (4) punitive damages; (5) triple damages up to $1000; (6) attorneys' fees; (7) reimbursement for loss of good will; and (8) reimbursement of expenses; and it is further

**ORDERED**, that the Motion to Dismiss is also **GRANTED** as to Plaintiff's unfair trade practices claim under Insurance Law § 2601, which is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Motion to Dismiss is **DENIED** as to Plaintiff's declaratory relief claim regarding the Employee Contribution; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action.

**IT IS SO ORDERED.**

DATED: November __, 2018

          Albany, New York

_____

LAWRENCE E. KAHN

United States District Judge